ORIGINAL

FILED
HARRISBURG

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FEB 21 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

JUHSEN HONG, ]
 ]
    Petitioner, ]
 ]  CIVIL NO. 1:CV-00-2151
    v. ]
 ]  (CALDWELL, J.)/Blewitt
CHARLES ZEMSKI, District ]
Director, INS, et al., ]
 ]
    Respondents. ]

PETITIONER'S ANSWER TO GOVERNMENT'S RESPONSE

Comes now Petitioner Juhsen Hong, and file this answer to the government's response. The court is familiar with the factual background of the case, thus, petitioner need not reiterate it. However, aver the following.

Additionally, petitioner request the court to accept his response out of time, because he did not receive the government's response on time due to the government's inadvertently sending the brief to Helen Wong, Esq. an attorney who represented petitioner in immigration court, however, petitioner no longer retain such attorney.

ARGUMENT

The government in their response stress that the court should deny petitioner relief based on the holding of the United States Court of Appeals for the Seventh Circuit in Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999). However, the factual scenario in Parra is dissimilar to the case at bar. For example, in Parra, the Seventh Circuit relied upon the fact that the petitioner conceded that he

was removable alien because of his conviction of aggravated sexual assault. Because of this concession, the petitioner effectively had the keys to his release as he could have simply consented to his removal to his native Mexico. Judge Easterbrook writing for the unanimous appeals court panel observed that "[a] criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuring delay to [to effect removal], and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs". 172 F.3d at 978.

In the case at bar unlike Parra, petitioner does not concede that his conviction requires his removal from the United States, nor was he convicted of aggravated sexual assault. Because the rationale of Parra was so linked to the factual settings of that case, its holding is distinguishable from the case at bar.

Petitioner is in removal proceedings and has not been ordered removed, additionally he intends to seek withholding of removal under the auspices of the United Nations Convention Against Torture, and if granted he may remain in the United States.

This court has grappled with a similar issue in Koita v. INS, 113 F.Supp.2d 737 (M.D.Pa. 2000) (Caldwell, J), and rejected the government's argument that § 1226(c) is constitutional. In doing so the court reasoned and followed the decisions that have recognized that mandatory detention whenever the Attorney General charges an alien with aggravated felony sweeps too broadly and that mandatory detention violates procedural due process by not granting an immigrant an opportunity to be heard on whether he should be

released from confinement while INS proceedings are pending. See also <u>Chukwuezi v. Reno</u>, No. 3: CV-99-2020, 2000 WL 1372883 (M.D.Pa May 16, 2000)(Vanaskie, C.J.); <u>Welch v. Reno</u>, 101 F.Supp.2d 347 (D.Md. 2000); <u>Van Eeton v. Beebe</u>, 49 F.Supp.2d 1186 (D.Or. 1999); <u>Nhoc Danh v. Demore</u>, 59 F.Supp.2d 994, 1003 (N.D.Cal. 1999).

In <u>Martinez v. Green</u>, 28 F.Supp.2d 1275, 1282 (D.Colo. 1998), the court held that although INS detention is plainly regulatory and not intended as punishment, the reality is that it is as restrictive as punitive confinement. As Judge Weis remarked:

> Characterizing prolonged detention as anything other than punishment might be somewhat puzzling to petitioner, who remained in jail under the same conditions as before the State released him, although his status had technically changed from that of a state inmate to an INS detainee. Similarly, an alien whose detention occurs in a maximum security federal prison may be forgiven for wondering when his punishment stopped and detention began. As Justice Jackson remarked, [i]t overworks legal fiction to say that one is free in law when by the commonest of common sense he is bound. <u>Mezi</u>, 345 U.S. at 220 (Jackson, J., <u>dissenting</u>). It is similarly unrealistic to believe that these INS detainees are not actually being "punished" in some senses for their past conduct.

Ngo v. INS, 192 F.3d 390, 397-98 (3d Cir. 1999).

<u>Ngo v. INS</u>, supra, lends additional support to a determination that the mandatory detention provision of § 1226(c) do not pass constitutional muster. In <u>Ngo</u>, supra, the court held that long term detention of an alien subject to a final removal order did not violate due process provided there was a possibility of the alien's removal, there were adequate and reasonable procedures to seek

/3

release pending removal, and there was an adequate factual premise for a conclusion that detention was necessary to prevent a risk of flight or threat to the community. Id. at 397. If an alien who is subject to a final removal order is entitled to an opportunity to seek release pending execution of the removal order, then an alien who is not yet subject to a final removal order should be accorded the same opportunity. As explained by Judge Katz in Bouayard:

> As the Third Circuit recognized in Chi Thon Ngo, due process demands an underlying justification for the detention of aliens. The petitioner in Chi Thon Ngo was an alien whose order of removal was final but who was still detained in the United States because his native country Vietnam, refused to accept him. The court emphasized the need for an individualized evaluation of the petitioner's detention. The process due even to deportable and excludable aliens requires an opportunity for an evaluation of the individuals current threat to the community and risk of flight.

74 F.Supp.2d at 475, 476.

In Hawkins v. Freeman, 195 F.3d 732 (4th Cir. 1999), the Fourth Circuit analysis between challenges to executive decisions and challenges to legislative decisions should act as a guide to petitioner's claim of substantive due process violation. In that decision, the Fourth Circuit opined that "[i]n executive act cases, the issue of factual arbitrariness should be addressed as a 'threshold question,' asking whether the challenged conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Id. at 738 (quoting County of Scranmento v. Lewis, 523 U.S 833, 118 S.Ct. 1708, 1717 n.8, 140 L.Ed.2d 1043 (1998)).

On the other hand, "[i]f the claimed violation is by legislative enactment (either facially or as applied), analysis proceeds by a . . . two step process that does not involve any threshold 'conscience-shocking' inquiry." Hawkin, 195 F.3d at 739. In the first step, the court must determine "whether the claimed violation invloves one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Id. (quoting Washington v. Glucksberg, 521 U.S. 702 (1997).

The second step in reviewing a legislative enactment depends on the outcome of the first step. See Hawkins, 195 F.3d at 739. If the asserted interest is "fundamental," then the court must apply strict scrutiny to the legislative enactment. Id. On the other hand, if the interest is not fundamental, the court should only apply a rational-basis standard of review. Id.

Since § 1226(c) was enacted by Congress, the standard for a legislative enactment applies. Therefore, this court must first "make a 'careful description' of the asserted liberty right or interest that avoids overgeneralization in the historical inquiry." Id. at 747 (quoting Glucksberg, 117 S.Ct. at 2268). In the case at bar, petitioner's interest is that of an individual, detained pending judicial proceedings, to receive a bail hearing in which a judge determines the individual's flight risk and threat to the community. The Supreme Court has held that such an interest is fundamental. See United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 2102-03, 95 L.Ed.2d 697 (1987).

/5

Applying <u>Salerno</u>, section 1226(c) will be upheld if the statute is regulatory in nature and not excessive to its purpose. Id. 107 S.Ct. at 2101; <u>Galvez</u>, 56 F.Supp.2d at 646. It is undisputable that section 1226(c) is regulatory in nature. See, e.g., <u>Galvez</u>, 56 F.Supp.2d at 646; <u>Chamblin</u>, 1999 WL 803970, at *10. The issue, therefore, is whether the restriction is excessive in relation to its purpose.

Section § 1226(c) simply does not offer safeguards designed to protect detainees against indefinite, or at least prolonged, detention. Given the liberty interest involved and the lack of safeguards, petitioner assert that it is unconstitutional and excessive in relation to its purpose and, therefore, violative of his substantive due process rights. See <u>Martinez</u>, 28 F.Supp.2d at 1283, "[w]here, as here, a fundamental liberty interest is implicated, constitutional due process may not be parsed and distributed solely to the persons adjudged by Congress to deserve it."

## CONCLUSION

Although Petitioner does not have an absolute right to remain at liberty while the deportation proceedins are pending, due process requires a current individualized evaluation to determine whether his continued detention is necessary to prevent a risk of flight or a threat to the community.

WHEREFORE, petitioner respectfully request this honorable court to issue an appropriate order commanding the Respondents to bring     him before an immigration judge for an individualized evaluation to determine whether his continued detention is necessary to prevent risk of flight or danger to the community or a flight risk, and petitioner ordered released from custody on bond upon

/6

reasonable conditions. And for any other relief that the court deems proper in the premise.

Dated February 19, 2001

                                                Respectfully submitted,

                                                *[signature]*

                                                JUHSEN HONG
                                                Snyder County Prison
                                                600 Old Colony Road
                                                Selinsgrove, PA 17870

CERTIFICATE OF SERVICE

I, the undersigned certify that I cause to be served a copy of the foregoing petitioner's answer to government's response on the foregoing counsel:

> Joseph J. Terz
> Assistant U.S. Attorney
> 228 Walnut Street, Suite 220
> P.O. BOX 11754
> Harrisburg, PA 17108

by depositing the same in the U.S. mail first class postage prepaid.

Executed February 19, 2001

_____
JUHSEN HONG